FILED
IN CLERKS OFFICE
2026 OCT -2 A 11: 27
U.S. DISTRICT COURT
DISTRICT OF MASS.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**UNITED STATES OF AMERICA,**
Plaintiff,

v.

**YUPENG SUN,**
Defendant.

Case No. **1-26-cr-10244-FDS-1**

---

**BRIEF OF AMICUS CURIAE**
**BRANDON MICHAEL HAYES**
**PRESIDENT, NATURAL LAW INSTITUTE**

**REGARDING GOVERNMENTAL VERIFICATION, INDIVIDUAL IDENTITY, AND PRECISE ATTRIBUTION OF OFFICIAL RECORDS**

---

## INTEREST OF AMICUS CURIAE

Brandon Michael Hayes submits this brief as amicus curiae in his individual capacity and appears pro se.

Mr. Hayes is President of the Natural Law Institute, an institute dedicated to the study of constitutional structure, lawful institutional design, adjudicative architecture, and the relationship between individual rights and governmental authority.

The Natural Law Institute studies questions concerning the proper allocation of authority, responsibility, accountability, verification, and decision-making within legal and civic institutions. The matters addressed in this brief fall within those areas of study.

Amicus submits this brief to provide the Court with an independent analysis of the structural principles implicated by governmental verification, individual identity, official attribution, and the reliability of governmental records.

The immediate proceeding concerns alleged criminal conduct.

The structural issue beneath that controversy is broader:

> **What must governmental systems establish to ensure that an official record corresponds precisely to the person, legal qualification, action, and consequence that the record purports to represent?**

That question extends beyond election administration.

Modern government operates through records. Those records determine or preserve legal status, eligibility, obligations, responsibilities, benefits, burdens, and accountability.

**The lawful operation of government therefore depends upon precise correspondence between reality and record.**

Amicus offers the Court a framework for preserving that correspondence.

---

## STATEMENT REGARDING CONSENT, AUTHORSHIP, AND POSITION OF AMICUS

Amicus curiae Brandon Michael Hayes appears pro se.

No party or counsel for any party authored this brief in whole or in part. No person other than Amicus contributed money intended to fund the preparation or submission of this brief.

Amicus submits this brief independently and expresses no position concerning the ultimate criminal liability of Defendant.

The Government retains its ordinary burden of proving every required element of any offense through lawful evidence and the applicable criminal process.

Defendant retains every constitutional and procedural protection applicable to the proceeding.

The purpose of this brief is antecedent and structural:

**to distinguish the governmental functions of qualification, identity, authorization, attribution, record creation, and resulting consequence so that those functions do not collapse into one generalized concept of "verification."**

---

## QUESTIONS PRESENTED

1. Whether reliable governmental administration requires legal qualification, individual identity, authorization, attribution, official record, and resulting consequence to remain analytically distinct and factually connected.
2. Whether election verification must be evaluated according to the particular uncertainty being resolved—qualification, identity, authorization, attribution, custody, or reconciliation—rather than treated as a single undifferentiated governmental function.
3. Whether a governmental record that attributes an act to a particular person must be understood as a consequential governmental determination requiring reliable correspondence between the actor and the recorded act.
4. Whether lawful verification requires sufficient precision to prevent identity substitution and false attribution while remaining tied to the existing legal condition being verified rather than becoming an independent permission structure.
5. Whether precise adjudication requires distinguishing the alleged wrongful act from the administrative conditions that permitted, detected, recorded, or attributed that act.

---

## INTRODUCTION

This case presents a problem of governmental correspondence.

The criminal proceeding asks whether Defendant committed the conduct alleged by the United States.

That question must be resolved through the ordinary criminal process.

But the allegations also expose an independent administrative problem:

> **How does government ensure that the person, legal qualification, governmental action, and official record all refer to the same human actor?**

That problem is foundational.

Government does not administer modern society through memory or physical presence alone.

It administers through records.

- A voter-registration record represents that a particular person possesses or claims specified legal qualifications.
- An election record represents that a particular governmental act has been associated with that person.

- An immigration record, licensing record, court record, tax record, criminal record, or benefits record performs comparable work within another domain.

Those records matter because consequences follow from them.

When correspondence is precise, government can administer rights and responsibilities accurately.

When correspondence fails, two opposite forms of error become possible.

First, government may demand more than is necessary to establish the lawful condition at issue. Verification can then expand into permission: an additional governmental prerequisite imposed upon a person who already possesses the substantive legal qualification.

Second, government may verify too little, verify the wrong object, or fail to preserve the connection between identity and act. Governmental records may then attribute conduct to the wrong person.

These failures appear opposite.

Structurally, they arise from the same defect:

> **The administrative mechanism has ceased to correspond precisely to the legal reality it is supposed to identify.**

The solution is therefore neither maximal verification nor minimal verification.

The solution is precise verification.

Precise verification asks the right question, of the right person, through a mechanism reasonably suited to the actual uncertainty being resolved.

Election administration makes this especially visible.

A lawful election system must preserve a reliable relationship among:

**Qualification → Identity → Authorization → Ballot or Electoral Act → Attribution → Record → Consequence**

Each link performs separate work.

- Citizenship is not identity.
- Identity is not authorization.
- Authorization is not the act itself.

- The act is not attribution.
- And attribution is not rendered precise merely because an official record exists.

The Court must preserve these distinctions because precise adjudication depends upon maintaining the legal separation among qualification, identity, authorization, attribution, record, and consequence. Doing so neither prejudges Defendant's culpability nor prejudices Defendant's rights, and it does not enlarge governmental authority; it clarifies what must correspond before governmental consequence can lawfully attach.

---

**SUMMARY OF ARGUMENT**

Governmental administration requires precise correspondence between legal conditions, individual identity, official actions, governmental records, and resulting consequences.

Election systems are one application of that broader principle.

A lawful election system must determine who is legally qualified, determine whether the individual invoking that qualification is the person associated with it, determine whether the individual is authorized to perform the particular electoral act, preserve precise attribution of the act, and maintain a reliable governmental record.

Those functions are distinct.

- **Qualification** asks whether a legal condition exists.
- **Identity** asks which person possesses or invokes that condition.
- **Authorization** asks whether that identified person may perform the relevant act.
- **Attribution** asks who actually performed the act being recorded.
- **Record** preserves the governmental representation of those determinations.
- **Consequence** follows from the record.

Collapsing these functions produces predictable administrative failure.

Overextension of verification can transform administration into governmental permission.

Underperformance of verification can detach conduct from identity and assign governmental consequences to the wrong person.

The Constitution and ordinary principles of lawful administration favor neither failure.

They require correspondence.

The same structural distinction appears in contemporary disputes concerning voting procedures.

One category of dispute asks whether verification mechanisms impose additional barriers upon persons who already possess the legal qualification to vote.

This proceeding presents the complementary concern: whether failures of identity verification and attribution can permit an electoral act to become associated with a person who did not perform it.

The two conditions must be analyzed together because the same architecture resolves both.

- Government must verify the legally relevant condition.
- Government must verify the identity necessary to connect that condition to the actor.
- Government must preserve reliable attribution of the resulting act.
- Government must maintain a correction mechanism when those connections fail.
- And government must avoid converting those functions into unrelated substantive prerequisites.

The resulting rule is reciprocal:

> **Verification must be sufficient to preserve precise correspondence and limited to the lawful uncertainty it exists to resolve.**

That principle protects government, lawful voters, innocent third parties, and criminal defendants simultaneously.

---

## ARGUMENT

### I. GOVERNMENTAL RECORDS ARE INSTRUMENTS OF CONSTITUTIONAL ADMINISTRATION

Government operates through records.

Registrations, licenses, databases, court records, election records, immigration records, criminal records, tax records, and administrative records perform different substantive functions, but they share one operational characteristic:

They convert factual and legal determinations into durable governmental representations.

Those representations carry consequences.

A record may establish that:

- a person is registered;
- a qualification was established;
- an obligation exists;
- an act occurred;
- a governmental benefit is available;
- a restriction applies;
- a criminal allegation attaches;
- or an official determination has been made.

The reliability of those records therefore matters independently of administrative convenience.

Governmental records become interfaces between reality and governmental action.

If the interface precisely represents reality, administration can proceed according to law.

If the interface misrepresents reality, later governmental actors may faithfully administer a false premise.

The error can then compound.

A mistaken identity can become a mistaken attribution.

A mistaken attribution can become an official record.

An official record can become the factual premise for later governmental consequence.

The foundational administrative obligation is therefore correspondence.

> **The governmental representation must remain connected to the person, condition, and act it purports to represent.**

This principle is especially important when governmental records affect fundamental rights or criminal responsibility.

The Constitution does not permit criminal responsibility to attach merely because an administrative record contains a name.

The Government must prove the defendant committed the charged conduct.

See *In re Winship*, 397 U.S. 358, 364 (1970) (requiring proof beyond a reasonable doubt of facts necessary to constitute the charged crime).

That criminal principle and the administrative principle reinforce one another.

Reliable records assist lawful adjudication.

Reliable adjudication tests whether those records precisely correspond to reality.

---

## II. QUALIFICATION, IDENTITY, AUTHORIZATION, ATTRIBUTION, RECORD, AND CONSEQUENCE ARE DISTINCT FUNCTIONS

The word "verification" can conceal several different governmental operations.

Those operations must be separated.

### A. Qualification

Qualification asks:

> **Does the legally required condition exist?**

Within election administration, qualifications may include citizenship, residency, age, registration status, or other conditions established by law.

Qualification concerns legal status.

It does not independently answer which person possesses that status.

---

### B. Identity

Identity asks:

> **Is this person the individual associated with the legal qualification being invoked?**

Identity and qualification are therefore distinct.

A person may possess the substantive qualification and still encounter an identity mismatch.

A person may establish identity perfectly while lacking the substantive qualification.

A system capable of determining only one cannot reliably administer the other.

---

**C. Authorization**

Authorization asks:

> **Does this identified and qualified person possess lawful authority to perform this particular act?**

Authorization connects identity and qualification to the governmental transaction.

The question is functional.

A person may exist.

The person may possess a legal status.

The system must still determine whether that status authorizes the act being performed.

---

**D. Attribution**

Attribution asks:

> **Who actually performed the act?**

This question is critically important.

An official record may identify a person.

The underlying legal question remains whether that person actually performed the recorded act.

Attribution therefore cannot be inferred merely from the existence of the record whose precision is in question.

---

**E. Record**

The governmental record preserves the result of the preceding administrative processes.

Ideally, it means:

> This identified person, possessing the relevant legal condition and authority, performed this act.

Where that proposition is true, the record faithfully represents reality.

Where one component is false, the record may become administratively misleading.

---

**F. Consequence**

Governmental consequences frequently attach to the record rather than to first-hand institutional observation of the underlying act.

That reality makes the precision of the earlier stages indispensable.

The complete sequence is:

**Legal Qualification → Identity → Authorization → Action → Attribution → Record → Consequence**

The system becomes fragile whenever one step is treated as proof of another.

---

## III. CRIMINAL ADJUDICATION MAKES PRECISE ATTRIBUTION ESPECIALLY IMPORTANT

The present proceeding concerns criminal allegations.

That posture sharpens the distinction between record and responsibility.

An administrative system may contain a record associating an act with an individual.

A criminal court asks the more demanding question:

> **Did this defendant actually perform the conduct constituting the offense charged?**

That inquiry cannot be replaced by administrative attribution.

Instead, administrative attribution becomes evidence whose reliability may itself require examination.

The criminal process therefore performs a necessary corrective function.

It tests correspondence.

The Government must connect:

**Defendant → Conduct → Required Mental State → Statutory Elements**

The administrative record may assist in proving that sequence.

It cannot substitute for the sequence.

This distinction protects the integrity of prosecution itself.

Where records are precise, rigorous attribution strengthens the Government's case.

Where records are imprecise, rigorous attribution prevents administrative error from becoming criminal consequence.

The same discipline protects innocent third parties.

If one individual can cause governmental systems to attribute an act to another individual, the resulting injury may extend well beyond the initial transaction.

The system must therefore possess mechanisms capable of detecting and correcting the divergence.

---

## IV. MISATTRIBUTION CREATES HARM BECAUSE GOVERNMENTAL CONSEQUENCE CAN FOLLOW THE WRONG PERSON

An imprecise record cannot be treated as simply an informational defect.

Government acts upon records.

That means misattribution can migrate.

A governmental record may influence:

- future eligibility determinations;
- investigations;
- administrative proceedings;
- immigration processes;

- licensing;
- benefits;
- criminal inquiries;
- credibility assessments;
- or later governmental decisions.

The resulting problem can be expressed simply:

> Government records that Person A performed Action X.

But reality may be:

> Person B performed Action X while invoking Person A's identity.

Once the first proposition enters an official system, later actors may rationally rely upon it.

The original verification failure can therefore become a multiplier of administrative error.

Lawful systems require an opposite design:

- **Conduct must follow the actor.**
- **Responsibility must follow conduct.**
- **Records must preserve that correspondence.**
- **Consequences must follow the precise record.**

Where the chain fails, correction must occur as close as possible to the point of failure.

That is corrective administration.

---

## V. ELECTION ADMINISTRATION ILLUSTRATES BOTH SIDES OF THE VERIFICATION PROBLEM

Election law frequently treats voter access and election integrity as competing interests.

That framing is incomplete.

Both depend upon precise administration.

A qualified voter possesses an interest in meaningful lawful participation.

Government possesses a legitimate interest in administering elections precisely, preventing unlawful participation, and maintaining reliable records.

See *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008).

The relevant question is therefore functional:

> **What uncertainty is government attempting to resolve, and does the verification mechanism correspond to that uncertainty without creating an unrelated condition?**

Two opposite failure modes follow.

**A. Verification Can Become Permission**

A legal qualification may already exist.

Government may require evidence reasonably connected to establishing that qualification.

But a mechanism that ceases to identify the lawful condition and instead creates an additional governmental prerequisite performs a different function.

The distinction is:

**Verification:**
Does the existing legal condition exist?

**Permission:**
Will government allow the individual to proceed despite the existing legal condition?

Those functions must remain separate.

---

**B. Verification Can Fail to Preserve Identity and Attribution**

The opposite error is equally consequential because misattribution compounds harm and increases the cost of correction at every downstream stage.

A system may permit an individual to invoke another person's identity or qualification.

The resulting act may then be attributed to the wrong individual.

This is not an access problem.

It is a correspondence problem.

The administrative system failed to preserve the relationship among:

**Person → Qualification → Identity → Act → Attribution**

The lawful answer to that failure is precise verification directed to the particular uncertainty exposed.

The answer need not be a generalized expansion of governmental permission.

---

## VI. THE NEW HAMPSHIRE AND MASSACHUSETTS QUESTIONS ARE COMPLEMENTARY RATHER THAN CONTRADICTORY

A contemporaneous First Circuit election dispute illustrates the reciprocal side of the same structural problem.

In *New Hampshire Youth Movement, et al. v. Scanlan, et al.*, No. 26-1740, the dispute concerns voting procedures and the relationship between proof of lawful qualification and the burden imposed upon eligible voters.

That controversy asks, among other things, how government may verify lawful qualification without converting administrative proof into a barrier functionally preventing lawful participation.

The present allegations expose the complementary concern:

> What happens when governmental systems insufficiently distinguish identity, qualification, and attribution?

The two questions point in opposite factual directions but toward the same lawful principle.

The New Hampshire question can be stated:

> **When does verification become an additional governmental condition?**

The present structural question can be stated:

> **When does insufficient verification permit responsibility to detach from identity?**

The same architecture resolves both.

- **Government must precisely identify the existing legal condition.**

- **Government must precisely identify the person associated with that condition.**
- **Government must preserve reliable attribution of the resulting act.**
- **Government must provide a correction process when correspondence fails.**
- **The mechanism must remain proportional to the uncertainty being resolved.**

This produces neither an access-maximizing rule nor a restriction-maximizing rule. It produces a rule of precise correspondence.

---

## VII. PRECISE VERIFICATION PROTECTS EVERY PARTICIPANT IN THE SYSTEM

Precise verification is institutionally reciprocal.

It protects interests usually presented as opposing.

### A. The Government

The Government benefits from records that precisely identify lawful and unlawful conduct.

Reliable identity and attribution improve enforcement because governmental action can be directed toward the responsible person.

---

### B. Lawful Voters

Lawful voters benefit when verification mechanisms are targeted to actual administrative uncertainty rather than converted into unnecessary barriers.

The lawful voter must be able to establish the condition the law actually requires through a reliable and accessible process.

---

### C. Innocent Individuals

Precise attribution protects individuals from governmental consequences arising from acts they did not perform.

That protection is fundamental wherever identity-bearing records travel across governmental systems.

---

**D. Criminal Defendants**

Reliable attribution preserves the integrity of criminal adjudication.

Criminal responsibility must attach to proven conduct of the defendant rather than to an administrative assumption or unreconciled record.

---

**E. Courts**

Courts benefit because precise administrative classification reduces the number of disputes that must be resolved downstream.

A system capable of precisely determining person, qualification, act, and attribution creates fewer contradictions for adjudication to repair.

The result is not merely more precise administration.

It is less unnecessary adjudication.

---

## VIII. CORRECTION MUST BE BUILT INTO VERIFICATION BECAUSE NO ADMINISTRATIVE SYSTEM IS ERROR-FREE

Verification systems must not be judged solely by whether they detect irregularity.

They must also be evaluated by how they correct error.

A precise administrative system must answer:

1. What condition is being verified?
2. What evidence establishes that condition?
3. What evidence establishes identity?
4. How are conflicting records reconciled?
5. How is identity substitution detected?
6. How is an erroneous mismatch corrected?
7. Who possesses authority to make the correction?
8. How rapidly does correction occur?
9. What happens to downstream records generated before correction?

10. How are consequences prevented from attaching to the wrong person?

This matters because verification mechanisms can themselves generate false positives.

A system that detects irregularity but lacks correction can transform administrative uncertainty into wrongful exclusion or wrongful attribution.

Correction is therefore part of verification.

It is not an afterthought.

---

## IX. THE PROPER OBJECTIVE IS MINIMUM SUFFICIENT VERIFICATION, NOT MAXIMUM FRICTION

The reliability of an administrative system must not be measured by how difficult it makes participation.

Difficulty is not verification.

Nor must reliability be measured by the absence of safeguards.

Ease is not accuracy.

The relevant standard is functional correspondence.

A verification mechanism must be:

- directed to a legally relevant condition;
- capable of resolving an identified uncertainty;
- administered by an actor possessing lawful authority;
- sufficiently reliable to preserve precise identity and attribution;
- accessible to lawfully qualified participants;
- accompanied by meaningful correction;
- and proportionate to the burden imposed.

This can be described as **minimum sufficient verification**:

> Sufficient to establish reliable correspondence, limited to what the lawful function requires.

That principle gives both access and integrity a lawful boundary.

---

**X. THE COURT OUGHT DISTINGUISH THE ALLEGED CRIMINAL ACT FROM THE ADMINISTRATIVE FAILURE MODE IT MAY EXPOSE**

The existence of an alleged criminal act does not itself establish that an entire election system is defective.

Likewise, the existence of a generally functioning system does not make an identified failure mode administratively irrelevant.

Those propositions must remain separate.

The Court's criminal task concerns Defendant.

The broader institutional lesson concerns architecture.

If the alleged conduct depended upon:

- mistaken identity;
- insufficient identity verification;
- record substitution;
- false attribution;
- or a failure of reconciliation,

the system can identify that failure without transforming the criminal proceeding into a referendum upon election policy.

That distinction improves institutional learning.

The criminal case can determine individual responsibility.

Administrators can separately determine whether the process exposed a correctable vulnerability.

Future corrective design can then address the actual failure mode rather than impose generalized burdens unrelated to it.

That is proportional correction.

---

**XI. THE COURT OUGHT APPLY A FIXED DECISIONAL SEQUENCE WHEN RECORD-BASED IDENTITY AND ATTRIBUTION ARE MATERIAL**

Amicus respectfully proposes the following framework where governmental records, identity, and attribution become material to adjudication.

**1. THE PERSON**

Who is the natural person whose conduct or legal status is at issue?

**2. THE QUALIFICATION**

What legally relevant condition is associated with that person?

**3. THE IDENTITY MECHANISM**

What evidence or process connects the presenting actor to that person?

**4. THE AUTHORIZATION**

What lawful authority permits the identified person to perform the act?

**5. THE ACT**

What governmental or legally significant action actually occurred?

**6. THE ATTRIBUTION**

What evidence connects that act to the person alleged to have performed it?

**7. THE RECORD**

What governmental record preserves or represents the attribution?

**8. THE CUSTODY**

How was the relevant record created, transmitted, maintained, and reconciled?

**9. THE CORRECTION PATH**

What process exists to resolve identity mismatch, false attribution, conflicting records, or administrative error?

**10. THE CONSEQUENCE**

What governmental or legal consequence follows from the record?

**11. THE BURDEN OF PROOF**

What evidentiary standard governs the tribunal's determination concerning the alleged actor and act?

**12. THE DISPOSITION**

What judicial action follows from the facts actually established?

This sequence prevents one administrative determination from silently performing the legal work of another.

A record does not prove identity merely because the record contains a name.

Identity does not prove conduct.

Qualification does not prove authorization.

Authorization does not prove that the act occurred.

And an alleged system vulnerability does not prove Defendant exploited it.

Each proposition must perform its own evidentiary work.

---

## XII. GOVERNMENTAL ADMINISTRATION REQUIRES CORRESPONDENCE BETWEEN REALITY AND RECORD

The governing structural rule can now be stated simply.

Governmental administration depends upon a connected sequence:

> **Legal Qualification → Identity → Authorization → Action → Attribution → Record → Consequence**

Every link must perform its own function.

Every link must remain connected to the underlying reality.

When verification expands beyond the lawful condition being identified, administration can become permission.

When verification fails to preserve identity and attribution, responsibility can become detached from conduct.

When correction is absent, administrative error can compound into governmental consequence.

The lawful objective is therefore precise correspondence.

That principle scales beyond elections.

It applies wherever government identifies persons, determines status, records conduct, and assigns consequences.

---

## PROPOSED CORE PRINCIPLE

Amicus respectfully proposes the following rule:

> **Governmental verification must be sufficient to establish reliable correspondence among the legally relevant condition, the individual invoking that condition, the action performed, and the official record created, while remaining limited to the uncertainty the government possesses lawful authority to resolve. A governmental record must not substitute for proof of individual conduct where attribution is disputed, and verification must not become an independent substantive condition unrelated to the legal qualification being administered.**

Applied to election administration:

> **Lawful election administration requires reliable correspondence among qualification, identity, authorization, electoral action, attribution, custody, and record. Verification must protect that correspondence while preserving meaningful participation by lawfully qualified voters and meaningful correction when administrative error occurs.**

Applied to criminal adjudication:

> **The existence of an official record attributing conduct to an individual may constitute evidence, but criminal responsibility remains dependent upon lawful proof that the defendant performed the conduct required by the charged offense.**

These principles allow administrative accuracy, voting access, election integrity, individual liberty, and criminal due process to operate together.

---

**CONCLUSION**

This proceeding need not become a generalized debate concerning voter identification or election policy.

The criminal question before the Court is narrower.

The structural lesson is broader.

Governmental systems operate through records.

Those records produce lawful consequence only insofar as they precisely correspond to reality.

Election administration therefore requires more than a generalized concept of verification.

It requires separation and reconciliation of:

1. legal qualification;
2. individual identity;
3. authorization;
4. the electoral act;
5. attribution;
6. official record;
7. correction;
8. and consequence.

The same structure protects every lawful interest implicated by the problem.

It preserves governmental authority to verify legally relevant conditions.

It protects qualified voters against unrelated permission structures.

It protects innocent persons against false attribution.

It protects criminal defendants against responsibility based upon administrative assumption rather than proven conduct.

And it improves governmental systems by identifying the precise point at which corrective feedback must occur.

The constitutional settlement is therefore neither maximal restriction nor minimal verification.

It is precise administration.

Amicus respectfully submits that lawful governmental systems must preserve a reliable correspondence between the person, the legal condition, the act, the record, and the consequence, and that each proposition must perform its own legal and evidentiary work before responsibility attaches.

Respectfully submitted,

**Brandon Michael Hayes**
President, Natural Law Institute
Pro Se Amicus Curiae
159 Indian Hill Street
West Newbury, Massachusetts 01985
(617) 438-2049
brandon@hayeshaus.com

Dated: Sept. 28, 2026